UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOANN G. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:13-cv-704-WTL-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Joann G. Hill requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court now rules as follows.

### I. PROCEDURAL HISTORY

Hill filed an application for SSI on April 16, 2009, alleging disability beginning February 1, 2009, due to schizophrenia and right knee pain. Farley's application was initially denied on August 21, 2009, and again upon reconsideration on November 4, 2009. Thereafter, Hill requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on July 19, 2011, before ALJ Stephen E. Davis in Indianapolis, Indiana. After the hearing, the ALJ requested additional information from Gail Corn, an independent vocational expert. On October 26, 2011, the ALJ issued a decision denying Hill's application for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on March 22, 2013. This action for judicial review ensued.

## II.   EVIDENCE OF RECORD

According to Hill, she was injured in a motor vehicle accident in 2000. Since then, she has experienced intermittent right knee pain and swelling. Her knee pain was treated fairly conservatively until March 2011, when an MRI revealed a small lateral meniscus tear with surrounding inflammation. On May 20, 2011, Hill underwent arthroscopic surgery with synovial debridement on her right knee. The surgery also revealed an enlarged parapatellar plica, which impinged on the medial femoral condyle.[1] Shortly after the surgery, Hill reported that she was still having pain and stiffness in her knee, but that her knee pain had improved since the surgery. As such, Hill's orthopedist referred her to physical therapy. Although Hill attended the initial evaluation, there is no evidence that she continued with the physical therapy sessions.[2]

## III.   APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

---

[1] "Plica syndrome . . . is a condition which occurs when a plica (an extension of the protective synovial capsule) becomes irritated, enlarged, or inflamed. . . . This inflammation is typically caused by the plica being caught on the femur, or pinched between the femur and the patella." *Plica syndrome*, WIKIPEDIA, http://en.wikipedia.org/wiki/Plica_syndrome (last visited May 16, 2014).

[2] Additional details regarding Hill's medical history are set forth in the parties' briefs

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

On review, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while "[he] is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1177.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Hill had not engaged in substantial gainful activity since April 16, 2009, her application date.[3] At step two, the ALJ concluded that Hill suffered from the following severe impairment: a meniscus tear of the right knee. The ALJ determined that Hill's anxiety disorder and polysubstance abuse were nonsevere impairments. At step three, the ALJ determined that Hill's severe impairment did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Hill had the residual functional capacity ("RFC") to perform light work, including:

> [L]ifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; standing and/or walking six hours in an eight-hour workday; sitting six hours in an eight-hour workday; occasional climbing of ramps and stairs; occasional balancing, kneeling, stooping, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; and no work on slippery or uneven surfaces.

Tr. at 16. Given this RFC, and taking into account Hill's age, education, and work experience, the ALJ determined at step five that Hill could perform jobs existing in significant numbers in the national economy, those being a cashier, an assembler, and a hand packager. Accordingly, the ALJ concluded that Hill was not disabled as defined by the Act from April 16, 2009, through the date of his decision.

## V. DISCUSSION

Hill advances several objections to the ALJ's decision; each is addressed below.

---

[3] Hill testified during the hearing that she worked intermittently for CSC as an usher at Lucas Oil Stadium. During sporting events, she stood near an elevator and directed attendees to their seats. Hill also worked as an usher/ticket-taker/security guard at out-of-state concert events for CSC. This work, however, did not rise to the level of substantial gainful activity.

## A. Lack of Substantial Evidence to Support ALJ's Decision

First, Hill argues that "[s]ubstantial evidence fails to support the ALJ's erroneous determination that Joann Hill was not disabled due to her chronic right knee pain limiting her ability to stand and walk, due to a torn lateral meniscus and due to a plica syndrome." Hill's Br. at 14. Specifically, Hill maintains that the ALJ "ignored or rejected the evidence which proved she was disabled." *Id.* The Court does not agree.

An ALJ need not discuss every piece of evidence in his disability decision. *See Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995). Rather, as noted above, the ALJ must simply "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Scheck,* 357 F.3d at 700.

Hill argues that the ALJ committed reversible error in failing to mention or discuss her diagnosis of plica syndrome in his decision. Indeed, the ALJ did not note this specific diagnosis. The ALJ, however, discussed at length Hill's treatment, symptoms, and limitations. As the Commissioner alleges, "[a]lthough the ALJ did not discuss the specific diagnoses that arose from Plaintiff's arthroscopic procedure, he fully considered all of the evidence regarding the functional limitations caused by Plaintiff's knee impairment." Commissioner's Resp. at 6-7.

Hill further argues that the ALJ "misstated the evidence to minimize the extent of the claimant's knee impairment." Hill's Br. at 15. In this regard, Hill argues that the ALJ erroneously concluded that "there [was] no indication as to whether the claimant followed [through with physical therapy]," when in fact, Hill had attended an initial physical therapy evaluation. Tr. at 20. The ALJ's conclusion, however, does not misstate the evidence. Again, as the Commissioner alleges, "[t]he mere fact that Plaintiff attended an initial evaluation for the purposes of getting physical therapy does not rebut the ALJ's observation that there is, in fact, no

evidence in the record that Plaintiff followed through with the recommendation to undergo physical therapy." Commissioner's Resp. at 7.

Lastly, Hill argues generally that the ALJ "selectively considered the medical treatment evidence" and ignored various other records. Hill's Br. at 16. Hill, however, points to no medical records that undermine the ALJ's findings.

In sum, the ALJ properly articulated his reasoning, and his determination is substantially supported by the medical evidence of record.

### B. Failure to Call Medical Expert

According to Hill, "[t]he ALJ's failure to summon a medical advisor (orthopedist) to testify whether the claimant's combined impairments medically equaled any Listed impairment such as 1.02A requires reversal of the denial decision." Hill's Br. at 19. Hill seems to take issue with the fact that the agency's reviewing physicians examined Hill prior to her 2010-2011 medical treatment (regarding her knee pain) and her knee surgery. The ALJ, however, did not abuse his discretion in failing to call a medical expert to testify at the hearing.

Whether a claimant's condition equals a listed impairment is "strictly a medical determination," and "the focus must be on medical evidence." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). However, the court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record and what measures are needed in to accomplish that goal. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2007); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Thus, an ALJ's decision to call a medical expert is discretionary, 20 C.F.R. § 416.927(f)(2)(iii), and an ALJ is not required to consult a medical expert if the medical evidence in the record is adequate to render a decision on the claimant's disability. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)

In this case, the ALJ specifically considered Listing 1.02 (major dysfunction of a joint),[4] and concluded that Hill's impairment did not meet the Listing. The ALJ noted that "despite residual effects from a specific knee injury, [Hill] never had the inability to ambulate effectively."[5] Tr. at 15. In support of her argument, Hill neither points to any evidence suggesting that this Listing is met, nor any evidence the absence of which renders the record undeveloped. In fact, Hill's post-surgical medical records indicate that the pain in her knee had improved.

Based on the foregoing, the ALJ did not err in failing to call a medical expert to testify at the hearing. Accordingly, the ALJ's determination at step three is not subject to remand on this basis.

### C. Credibility Determination

Next, Hill argues generally that the ALJ's credibility determination was "patently erroneous" because it was "contrary [to] the evidence and contrary to Social Security Ruling 96-7p." Hill's Br. at 22. The Court does not agree.

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and

---

[4] Listing 1.02 is

[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively . . .

[5] "'Ineffective ambulation' is 'defined generally' as requiring the use of a hand-held device that limits the functioning of both upper extremities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citing 20 C.F.R. pt. 404P, app. 1, § 1.00(B)(2)(a).

limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify his finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). District courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

Hill seems to fault the ALJ for using boilerplate language to explain his credibility finding. Although the Court shares in the sentiments expressed by the Seventh Circuit regarding the meaninglessness of Social Security "templates," such as the one used here, *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012), the ALJ in this case conducted a very thorough credibility determination. After noting and evaluating each of the factors identified above, the ALJ determined that Hill's physical and mental ailments were not as limiting as she alleged. *See* Tr. at 19-20. In doing so, the ALJ identified several specific reasons for his finding. For example, the ALJ noted inconsistencies between the record and Hill's subjective complaints: Hill complained that she could not stand or walk for significant periods, yet she worked as an usher and ticket taker at Colts games and other events; Hill also reported that she performed normal household duties such as cooking and cleaning (although, with her knee pain, it took her longer to perform such tasks), and she babysat her grandchildren.

Because the ALJ considered the required factors and supported his determination with specific reasons, his credibility finding was based on substantial evidence and was not patently wrong.

### D. Step Five Determination

Finally, Hill argues that the ALJ erred when he determined that Hill was not disabled because she could perform some jobs. First, Hill argues that "[t]he ALJ's determination that the claimant could not perform any of her past work but could perform other jobs . . . was inconsistent because both her past work and the other jobs were at the light level." Hill's Br. at 26. The record indicates that Hill previously worked for a number of companies, including Kroger, Popeye's, Value World Inc. of Indiana, Family Dollar, and CSC. For the most part, the record does not indicate what positions Hill held with these companies and whether the positions comply with the RFC determined by the ALJ. Thus, Hill's argument is unpersuasive.

Next, Hill argues that the RFC is contrary to the medical opinion of Dr. Paracha, who opined that Hill "should avoid any strenuous activity or being on her legs for a long period of time until after the surgery." Hill's Br. at 26 (quoting Tr. at 302). This, however, was a *pre-operative* instruction. Hill had surgery on May 20, 2011. Thus, the instruction in no way relates to Hill's post-operative care and is not contrary to the RFC.

Lastly, Hill argues that "[t]he ALJ's hypothetical questions to the vocational expert failed to consider the claimant's allegations of total disability due to her chronic right knee pain." Hill's Br. at 26. Indeed, the ALJ must give full consideration to all of a claimant's documented impairments. *Indoanto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Moreover, "the ALJ must consider a claimant's subjective complaint of pain if supported by medical signs and findings." *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citations omitted). Here, however, the ALJ performed a proper credibility determination and concluded that Hill's complaints of disabling pain and alleged limitations were not entirely credible and also not supported by the medical evidence. Thus, the ALJ was not required to account for, include, or consider such information

with regard to the hypothetical given to the vocational expert. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (citations omitted) ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record.").

Here, the ALJ's determination at step five accounted for Hill's RFC, age, education, and work experience, as well as the vocational expert's written testimony. Accordingly, the ALJ's step five analysis is supported by substantial evidence.

## VI. CONCLUSION

In this case, the ALJ satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED: 05/19/2014

*[signature]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.